**315 A.2d 752.**

S̲t̲a̲t̲e̲ *vs.* T̲h̲o̲m̲a̲s̲ J̲o̲s̲e̲p̲h̲ C̲o̲f̲o̲n̲e̲.

MARCH 7, 1974.

P̲r̲e̲s̲e̲n̲t̲: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. Thomas Joseph Cofone was indicted under G. L. 1956 (1968 Reenactment) §21-28-31 for the unlawful possession of marijuana which was found in his pocket when he was arrested. At the commencement of his trial in the Superior Court he moved to suppress the evidence upon which that indictment was predicated on the ground that it was the product of an unlawful, warrantless search and seizure. That motion was heard in the absence of the jury in what was in effect a suppression hearing.[1] The motion was denied and trial was then resumed before the jury. Cofone was convicted and he now presses exceptions to the denial of the motion to suppress as well as to the trial justice's rulings sustaining the state's objections to his questions seeking the name of the informant whose communication the state asserted furnished the probable cause for the arrest and search.[2]

The facts are not in dispute. At approximately 8:55 p.m. on March 11, 1969, Detective Richard P. Sullivan of the state police narcotics squad and two other police officers were patrolling in the Westerly area in an unmarked police car. He received a radio call from the Hope Valley Barracks directing him to call a certain telephone number in Westerly. He made that call and, although he did not name the person who answered, he identified him "as a

---

[1]This was a procedure which we approved in *State* v. *Leavitt*, 103 R. I. 273, 280-83, 237 A.2d 309, 314-15 (1968); *but see State* v. *Maloney*, 111 R. I. 133, 300 A.2d 259 (1973).

[2]We do not sua sponte inquire whether the issue of nondisclosure can be raised on appeal by a defendant who, when disclosure was refused, did not then move to strike the related testimony or to dismiss the action. 8 Wigmore, *Evidence* §2374 at 771-72 (McNaughton rev. 1961); Annot., 76 A.L.R.2d 262, 302-04 (1961).

confidential and reliable informant in regard to drug traffic and drug violations," who had contacted him as frequently as 35 to 40 times a week and who had provided him since late 1966 with reliable information resulting in arrests and convictions.

On this occasion, according to Detective Sullivan, he was asked by the informant whether he knew Tommy Cofone, and when he responded that he did, the informant told him:

> " 'I'm down here at the Franklin Street Shopping Center and Tommy Cofone is here. He has just shown me an amount of marijuana — a plastic bag of marijuana and he put it back in his left-front pocket, trouser pocket, and he's getting into his car and he's headed home.' "

The informant then described the automobile as a late-model blue Oldsmobile having license plates beginning with the letters "HY."

Armed with that information, Detective Sullivan, who knew Cofone and where he lived, rejoined the two police officers with whom he was traveling. They then headed for the shopping center; en route Detective Sullivan observed the vehicle which his informant had just described. It was proceeding in the opposite direction and toward Cofone's home. When Detective Sullivan recognized Cofone as the driver, he immediately reversed direction, overtook Cofone's vehicle and signalled him to pull over to the side of the road and stop. Cofone complied and he and the police officers then emerged from their respective vehicles.

Cofone was placed under arrest and, while being advised of his rights by one of the other officers, was searched by Sullivan. A plastic bag containing about three-fourths of an ounce of a "greenish-brown material," later identified as marijuana, was found in his left front trouser pocket.

There can be no doubt that on this record the arrest and incidental search were constitutionally valid, it being clear that the facts and circumstances were sufficient at the moment of the arrest to warrant a man of reasonable caution in believing that Cofone had committed or was committing the offense for which he was being arrested. *Beck* v. *Ohio,* 379 U. S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964); *Brinegar* v. *United States,* 338 U. S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879, 1890 (1949); *Carroll* v. *United States,* 267 U. S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925); *State* v. *Soroka,* 112 R. I. 392, 395, 311 A.2d 45, 46 (1973).

That the information upon which the arrest was made consisted of a hearsay communication from an informant is immaterial because here, unlike the situation in *State* v. *Soroka, supra,* which we decided earlier this session, there was an adequate showing "* * * of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, [citation omitted] was 'credible' or his information 'reliable.'" *Aguilar* v. *Texas,* 378 U. S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964); *see also Spinelli* v. *United States,* 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States* v. *Ventresca,* 380 U. S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Draper* v. *United States,* 358 U. S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *State* v. *Roach,* 106 R. I. 280, 283, 259 A.2d 119, 122 (1969).

Cofone argues, however, that the withholding of the informant's identity was a sufficient ground to require suppression of the evidence. More specifically, perhaps, the question he raises, as we understand it, is this: Does the privilege of nondisclosure apply when the existence

of probable cause for a warrantless arrest and incidental search hinges solely upon an arresting officer's unsupported and uncorroborated testimony of what an unidentified confidential informant told him?

It is that question and no other which we decide. While that question is troublesome and one on which the authorities differ,[3] it is now settled that it is not of constitutional proportions. *McCray* v. *Illinois,* 386 U. S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Instead, it is an evidentiary issue involving (1) the Government's privilege to withhold from disclosure the identities of persons who furnish information vital to law enforcement and who desire or require the protection of anonymity, and (2) the circumstances in which that privilege should yield to the accused's interest in a truthful verdict. *Roviaro* v. *United States,* 353 U. S. 53, 59-61, 77 S.Ct. 623, 627-28, 1 L.Ed.2d 639, 644-45 (1957).

Those authorities which deny the informer's privilege in these circumstances are convinced that "[t]here is no way to determine the reliability of Old Reliable, the informer, unless he is produced at the trial and cross-examined." *McCray* v. *Illinois, supra* at 316, 87 S.Ct. at 1065, 18 L.Ed.2d at 74 (Douglas, J., dissenting). They are

---

[3]The leading case holding that there is a firm right to disclosure where probable cause for a warrantless arrest and search based solely on an informant's communication is challenged is *Priestly* v. *Superior Court,* 50 Cal.2d 812, 330 P.2d 39 (1958); *but see* Cal. Evid. Code §1042(c) (West 1966), as amended; *accord, People* v. *Malinsky,* 15 N.Y.2d 86, 209 N.E.2d 694, 262 N.Y.S.2d 65 (1965); *but see People* v. *Castro,* 29 N.Y.2d 324, 277 N.E.2d 654, 327 N.Y.S.2d 632 (1971). The leading case holding contrawise is *State* v. *Burnett,* 42 N. J. 377, 201 A.2d 39 (1964); *accord, e.g., DeLaCruz* v. *People,* 177 Colo. 46, 51-52, 492 P.2d 627, 630-31 (1972); *Scull* v. *State,* 122 Ga.App. 696, 178 S.E.2d 720 (1970); *State* v. *Texeira,* 50 Hawaii 138, 145-48, 433 P.2d 593, 598-600 (1967); *People* v. *Durr,* 28 Ill.2d 308, 192 N.E.2d 379 (1963); *State* v. *Purdy,* 278 Minn. 133, 153 N.W.2d 254 (1967); *Strode* v. *State,* 231 So.2d 779, 784 (Miss. 1970); *see State* v. *Johnson,* 162 Conn. 215, 227-29, 292 A.2d 903, 909-10 (1972).

equally convinced that the effect of denying an accused that opportunity will be to make an arresting officer the sole judge of what is probable cause and to encourage "* * * lawless enforcement of the law." *Priestly* v. *Superior Court,* 50 Cal.2d 812, 816, 330 P.2d 39, 41 (1958).

Thus, in this case they would have rejected the state's claim to the informer's privilege, leaving the state with two choices: (1) insisting upon nondisclosure, the price for which would be dismissal of the indictment; or (2) affording Cofone a chance to cross-examine Old Reliable in order to ascertain whether in truth there was a confidential informant and, if so, to learn from him whether Detective Sullivan truthfully testified to his communications.

The authorities taking a contrary view do not question that society's need for the free flow of information which the privilege encourages is outweighed by the need for a truthful verdict if, as in *Roviaro* v. *United States, supra,* the informant is a witness to the crime and can offer information which is both "relevant and helpful" on whether or not the accused committed the crime charged.

They distinguish such a case, however, from one in which the name sought is that of the confidential informant upon whose communication the state depends for probable cause for a warrantless arrest and search. Disclosure, if routinely granted in that situation, will be routinely requested even by an accused who seeks to avoid a truthful verdict. After all, "[t]he very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand * * *" *State* v. *Burnett,* 42 N.J. 377, 386, 201 A.2d 39, 44 (1964), and an accused who seeks suppression "* * * has nothing to lose and the prize may be the suppression of damaging evidence if the State cannot afford to reveal its source, as is so often the case." *Id.* at 385, 201 A.2d at 43.

While much more could and has been said on the question, it is clear that both the proponents and the opponents have mustered strong arguments. Accordingly, our task is to fashion an approach which will not interrupt the free flow of information to law enforcement officials and at the same time will not bar an accused from presenting a fair defense to the crime charged. In our judgment the New Jersey court achieved that result in *State* v. *Burnett, supra.*

That court modeled its approach upon the rules which control an independent judicial officer when the existence of probable cause is submitted to him on an ex parte application for a warrant. If the affidavit is based upon hearsay, his concern will not be with the truth of the hearsay, but with whether the affiant is telling the truth. If he entertains doubts on that score, or if he finds that the affiant was in bad faith or that he misrepresented, he may require the informant to be identified or produced or he may refuse to issue the warrant; but if he finds otherwise, he may issue the warrant without requiring disclosure. *Rugendorf* v. *United States,* 376 U. S. 528, 533, 84 S.Ct. 825, 828-29, 11 L.Ed.2d 887, 891-92 (1964).

We see no reason why in the case of a warrantless arrest and search a like procedure will not satisfactorily resolve the clash between society's interest in preserving the informer's privilege and the accused's right to fully and fairly defend himself. We hold, therefore, that

> "* * * it should rest entirely with the judge who hears the motion to suppress to decide whether he needs such disclosure as to the informant in order to decide whether the officer is a believable witness." *State* v. *Burnett, supra* at 388, 201 A.2d at 45.

We appreciate, as did the New Jersey court in *Burnett,* that an arresting officer after the event may be less accurate in what he says than if he had applied for a warrant in advance of an arrest and search, but like that court we

believe that "* * * this is merely a circumstance which the judicial mind may weigh in deciding whether it can pass upon probable cause without the disclosure of the informant." *Id.* at 389, 201 A.2d at 46.

The approach we approve today, however, cannot now be applied in this case, as the record before us does not tell us why the trial justice ruled against disclosure. Perhaps he did so because he concluded that the rule of law does not require disclosure. To fill that gap in the record will require a new hearing in the Superior Court, which should be promptly held and should be limited to deciding whether Detective Sullivan is a believable witness.

At that hearing, both the state and Cofone shall be afforded an ample opportunity to explore fully Detective Sullivan's credibility. If that court is unable to determine whether Detective Sullivan is truthful in his testimony about what the informer told him and about the underlying circumstances which led to his conclusion that the informant was reliable, it shall order a new trial. Conversely, if it decides that Detective Sullivan's testimony as to those matters is believable, Cofone's conviction will stand, subject to his right to a review of whether the trial justice erred in those findings.[4]

The case is remitted to the Superior Court for further proceedings consistent with this opinion.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*Frank S. Cappuccio, Louis B. Cappuccio,* for defendant.

[4]On such an appeal this court accepts the trial justice's resolution of disputed questions of fact unless clearly wrong. *State* v. *Espinosa,* 109 R. I. 221, 229, 283 A.2d 465, 469 (1971); *State* v. *Ouimette,* 108 R. I. 283, 286, 274 A.2d 732, 733 (1971); *State* v. *Leavitt,* 103 R. I. 273, 289-91, 237 A.2d 309, 318-19 (1968).