402 A.2d 740.

STATE *vs.* WILLIAM P. DEWOLFE, JR.

JUNE 20, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

678

, DORIS, J. On December 12, 1976, the defendant, William P. DeWolfe, Jr., was convicted by a Superior Court jury on an indictment charging him with various narcotics offenses.[1] In this appeal, the defendant argues that his conviction rests upon evidence obtained in contravention of the fourth amendment, that he was a victim of entrapment by the police, and that the court below improperly admitted evidence of extraneous criminal activity by the defendant.

At trial, the state presented the following evidence. Robert F. Lippman, a special employee[2] of the Federal Drug

---

[1]Count 1, May 21, 1974 – unlawful possession of Lysergic Acid Diethylamide (LSD) with intent to sell; count 2, May 21, 1974 – unlawful possession of amphetamine; count 3, May 8, 1974 – unlawful sale of amphetamine.

[2]The defendant characterized Lippman as an unpaid informant seeking to curry favor with the Drug Enforcement Administration. For convenience, however, we will hereafter refer to all employees of the Drug Enforcement Administration as agents.

Enforcement Administration, testified that he first met defendant in April of 1974 at a party held at the home of a mutual friend. The defendant was at that time a student at the University of Rhode Island. Lippman testified that at that party and on subsequent occasions during the next few weeks he witnessed defendant selling or distributing various drugs. Lippman eventually made arrangements for him and his "partner," special agent Thomas A. Battell (Battell), to purchase a large quantity of amphetamines from defendant. This sale was consummated on May 8, 1974, when Lippman and Battell met with defendant at defendant's Kingston Inn apartment and defendant sold them 2,300 amphetamine pills.

Later in the month, the undercover agents approached defendant about the purchase of a large quantify of LSD. A meeting was arranged for May 21. Battell and Lippman testified that on this date, at about 9:15 p.m., they again met with defendant at his apartment. Battell and defendant agreed on a transaction of 16,000 doses of LSD for $8,000. The defendant then telephoned one Robert D'Ambra (D'Ambra) and made arrangements for the delivery of the drugs. The defendant told the agents that the drugs would arrive in 1½ hours and that they should return at that time. As the agents were leaving, defendant accompanied them to their car where another undercover agent showed defendant $11,000 as available purchase money.

Battell and Lippman returned to defendant's apartment at 10:45 p.m. Accompanying them, but hidden outside, was a backup team of federal agents and South Kingston police, led by Captain H. Ronald Hawksley (Hawksley). A short time later, D'Ambra arrived and carried two boxes containing 8,000 units of LSD into defendant's apartment. Battell and D'Ambra then briefly renegotiated the price and quantity terms of the sale. According to Battell, D'Ambra stated that because he did not know the agents that well he would only sell them half of the 16,000 doses that had been previously agreed upon. D'Ambra promised, however, that if this sale was successful, he would sell the agents the other 8,000 doses.

Following their discussion, Battell left, ostensibly to acquire the purchase money. Once outside, Battell gave a prearranged signal to the backup team and then returned to the apartment with his "money man," another federal agent. As Battell reentered the apartment, he left the door open. Moments later the backup team rushed in, arrested defendant, and seized the LSD.

After the arrest, Battell testified that he and Hawksley decided to seek a warrant to search the rest of defendant's apartment. At 11 p.m. a warrant was issued to Hawksley based on an affidavit submitted by Battell. According to testimony by Hawksley, defendant's apartment was then searched and two bottles of amphetamines were found in a dresser drawer.

In this appeal, defendant first submits that the warrantless seizure of the LSD incident to the arrest was unlawful. The defendant argues in substance that because there was ample time to secure an arrest warrant, the contraband seized was the fruit of an unlawful arrest. We find no merit in this contention. The defendant was arrested while in the act of selling a controlled substance to federal drug enforcement agents. It is undisputed that the agents were on the premises consensually. In such circumstances, an arrest may be made lawfully without a warrant. General Laws 1956 (1969 Reenactment) §12-7-4 provides:

"Arrest without warrant for felony. — A peace officer may without a warrant arrest a person for a felony, whenever:

(a) The officer has reasonable ground to believe that a felony has been or is being committed and that the person to be arrested has committed or is committing it.

(b) The person to be arrested in fact has committed or is committing a felony, and in such case it shall be immaterial that the officer did not believe him guilty or on unreasonable ground entertained belief in his guilt."

The warrantless seizure of contraband pursuant to a valid arrest is an exception to the warrant requirement of the fourth amendment. *Ker* v. *California*, 374 U.S. 23, 34-35, 83 S. Ct. 1623, 1630-31, 10 L. Ed. 2d 726, 739 (1963); *State* v. *Brown*, 106 R.I. 453, 459, 260 A.2d 716, 719 (1970). There is no question that in the instant case the LSD was seized incident to the arrest. Indeed, defendant admitted that the LSD had been transferred to the possession of the federal agents before the police entered and made the arrest.

The defendant next contends that the trial justice erred in curtailing defendant's right to call witnesses at a suppression hearing held shortly before trial. At this hearing, defendant was the first witness to testify. The defendant admitted that he had participated in the LSD transaction on May 21, and he admitted that his arrest and the seizure of the LSD had taken place after the consensual transfer of the LSD to the undercover agents. He claimed, however, that the bottles of amphetamines — the subject matter of count 2 of the indictment — were discovered in a search of his apartment at the time of the arrest, well before the police obtained a search warrant. Captain Hawksley testified next. His testimony contradicted defendant's in one significant respect; he stated that the bottles of amphetamines were not discovered until after the search warrant was secured. At the conclusion of Hawksley's testimony, the justice denied the motion to suppress and refused to allow defendant to examine further witnesses stating that there was ample probable cause for both the arrest and for the issuance of the search warrant.

Although we do not endorse the restrictive nature of the hearing in this case, we are not persuaded that it was reversible error. Generally, wide latitude should be granted to counsel to proffer evidence in support of a motion to suppress evidence allegedly obtained in violation of the fourth amendment. This is not to say, however, that counsel has an unfettered right to use the hearing as a discovery device. After a motion has been made to suppress evidence obtained by search and seizure, Rule 41(f) of the Superior Court Rules of

Criminal Procedure provides that: "The judge shall receive evidence on any issue of fact necessary to the decision of the motion."

In the instant case the trial justice stated, and we agree, that the candid testimony of defendant himself indicated with ample sufficiency that probable cause existed to arrest defendant and seize the LSD lawfully. We see no reason therefore why more testimony was necessary to rule on this issue.

The defendant also argues that he had a right to examine other witnesses regarding the search warrant. The defendant especially contends that he had a right to examine Battell, the affiant of the warrant affidavit. However, defendant's written suppression motion submitted to the court below neither mentions the search warrant nor the affidavit.[3] Nor did defendant orally supplement his motion at the hearing with any explanation why he thought the search warrant was invalid or the affidavit insufficient.[4] Alleging mere conclu-

---

[3]The record indicates that defense counsel was apparently unaware of the existence of the search warrant prior to the suppression hearing. During defense counsel's examination of Hawksley, counsel had that witness read the search warrant affidavit into the record.

[4]Although decided after the proceedings in the instant case, in *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the Supreme Court addressed the question whether a defendant had a right to a hearing to challenge the truthfulness of statements made in the affidavit supporting the warrant. Writing for the Court, Justice Blackmun stated:

> "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any non-governmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth Amendment, to his hearing." Id. at 171, 98 S.Ct. at 2685, 57 L.Ed.2d at 682.

sions — that the warrant and affidavit were "not sufficient" — is not enough. *United States* v. *Hickok*, 481 F.2d 377, 379 (9th Cir. 1973); *United States v. Davis*, 330 F. Supp. 899, 903 (N.D. Ga. 1971). As one court has remarked, "[e]videntiary hearings need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved." *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972).

Accordingly, the only question properly before the justice was whether probable cause was facially established within the four corners of the affidavit. With the warrant issue presented in this fashion, we do not believe that the trial justice erred by refusing to let defendant examine the affiant, *United States v. Thornton*, 454 F.2d 957, 966-67 (D.C. Cir. 1971), or to call other witnesses. *See State v. Cofone*, 112 R.I. 760, 766-67, 315 A.2d 752, 755-56 (1974). *Cf. Peckham* v. *United States*, 210 F.2d 693, 697 (D.C. Cir. 1953).

The defendant next contends that the trial justice erred in admitting evidence of drug sales by defendant that were not the subject of the indictment under trial. The defendant first complains of the testimony of agent Battell, introduced during the presentation of the state's direct case, relating to defendant's involvement in the sale of amphetamines on May 10, 1974.[5] Battell testified that on this occasion defendant brought him to a dormitory room at the University of Rhode Island where Battell purchased 10,000 amphetamine tablets from Robert D'Ambra. The trial justice instructed the jury that this evidence was admited only on the issue of defendant's criminal intent as it related to his later conduct on May 21 — the date of defendant's alleged criminal participation

---

[5]The defendant alludes to other testimony regarding prior drug activities by the defendant. However, we do not find his complaints on these matters well taken, or in need of extensive discussion, because the evidence complained of was either 1) brought out by the defendant on direct examination; or 2) brought out by the defendant on cross-examination.

in the LSD sale between D'Ambra and the drug agents. Under our oft-cited rule in *State v. Colangelo*, 55 R.I. 170, 174, 179 A. 147, 149 (1935), this evidence was properly admitted for this limited purpose. *See State v. Jalett*, 119 R.I. 614, 382 A.2d 526 (1978).

The defendant next challenges the right of the state to impeach his entrapment defense with evidence of other drug sales. The defendant complains that after he testified in support of his defense of entrapment, the prosecutor improperly cross-examined him regarding previous drug sales and a prior conviction for selling drugs. Similarly, he assails the introduction of evidence of prior drug sales during the state's rebuttal to defendant's entrapment defense. We find nothing improper in the admission of this evidence.

By raising the defense of entrapment, the defendant put in issue his predisposition to sell and possess drugs. *Hampton v. United Stated*, 425 U.S. 484, 488-89, 96 S. Ct. 1646, 1649, 48 L. Ed. 2d 113, 118 (1976); *United States v. Russell*, 411 U.S. 423, 433, 93 S. Ct. 1637, 1643, 36 L. Ed. 2d 366, 374 (1973). In light of the nature of the entrapment defense — which in this case sought to portray defendant as an unwilling participant — we fail to see how defendant can complain about the admission of evidence relevant to his state of mind. The state was entitled to show, by evidence of defendant's voluntary participation in other drug sales, that its undercover drug operation had trapped an "unwary criminal," not an "unwary innocent." *Sherman v. United States*, 356 U.S. 369, 372, 78 S. Ct. 819, 821, 2 L. Ed. 2d 848, 851 (1958); *Sorrells v. United States*, 287 U.S. 435, 441, 53 S. Ct. 210, 212, 77 L. Ed. 413, 416 (1932); *United States v. Owens*, 346 F.2d 329, 332 (7th Cir.), *cert. denied*, 382 U.S. 878 (1965). *See also State v. Gilman*, 110 R.I. 207, 291 A.2d 425 (1972).

Finally, the defendant contends that the lower court erred in denying his motion for a new trial. The thrust of his argument is that the evidence establishes entrapment as a matter of law and therefore the ruling of the trial justice was clearly wrong. We find no merit in this contention. The record in

the instant case discloses substantial, indeed overwhelming evidence that the defendant was a willing and voluntary participant in the drug activities for which he was indicted. The government did not "manufacture" the crime in this case.

> "[T]he fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials." *Sherman* v. *United States*, 356 U.S. at 372, 78 S. Ct. at 821, 2 L. Ed. 2d at 851.

Accordingly, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

*Dennis J. Roberts II,* Attorney General, *John S. Foley,* Special Assistant Attorney General, for plaintiff.

*Cappuccio & Cappuccio, Frank S. Cappuccio,* for defendant.