DECISION
Defendant Christopher W. Gribble ("defendant") has been charged by criminal information with four criminal offenses relating to his alleged conduct on August 20, 2006. The most serious of the charges is the allegation that defendant used a digital recording device to obtain photographs of intimate areas of others without their knowledge or consent. (Crim. Compl. Count 1) He also has been charged with assault and battery of a bystander, assault and battery of an officer, and obstructing an officer while the officer was in the execution of his office and duty. (Crim. Compl., Counts 2-4)
The defendant has filed a Motion to Suppress evidence seized by the Newport Police Department on the date of his arrest, namely: the camera devices and digital images stored thereon. The parties have stipulated that the factual assertions contained within the exhibits of the information package are to be used by the Court for the purpose of deciding the motion. After consideration of the subject exhibits, arguments by the parties and the memoranda of law submitted, the motion is now ripe for decision.
 Facts and Travel *Page 2 
On August 20, 2006, Newport Police Officers responded to a report of a suspicious person who appeared to be taking photographs of young girls using a concealed camera in his backpack. As police officers approached defendant to investigate the complaint, defendant pushed an officer away and attempted to flee, knocking down a bystander in the process. Police quickly apprehended defendant and handcuffed him. The witness who made the original complaint came to the scene and identified defendant as the individual he saw taking the pictures. The defendant was placed under arrest. The police then searched defendant. They uncovered no contraband or weapons. However, they did find a backpack with two digital cameras in defendant's possession.
While still at the arrest scene, police viewed photographs on defendant's cameras that showed young females wearing short skirts and tops. A video was also on one of the camera's memory card. It showed defendant's camera following a female wearing a skirt and occasionally pointing upwards to reveal the girl's underwear and private parts. Meanwhile, another officer located the bystander who defendant had knocked down, and he brought her to defendant's arrest location. The bystander positively identified defendant as the person who assaulted her.
The police then transported defendant to the police station where he was booked, searched, and fingerprinted. The defendant was placed in a cell after he made a phone call. Meanwhile, at the station, an officer downloaded the cameras' memory cards onto the police computer, and then viewed all the images. All the photos were of young females taken from below waist level, and allegedly taken without their consent. There were also four videos on the memory cards. One video in particular showed a female going from store to store with the camera focus primarily pointed at her buttocks. At other times, the camera lens pointed *Page 3 
underneath her skirt to show her underwear. After being advised of hisMiranda[1] rights, defendant was questioned by police at the station. He admitted to taking the photos and videos found on the cameras' memory cards without the subjects' consent. As a result, defendant was charged with video voyeurism pursuant to G.L. 1956 § 11-64-2.
The defendant has filed a Motion to Suppress all the evidence seized from the digital cameras. He contends that he was subject to an illegal search, and that the police should have obtained a warrant. The defendant also argues that any statements he made to Newport Police are inadmissible as fruits of the poisonous tree. The State has objected.
 Discussion
The defendant avers that the police officers violated his Fourth Amendment rights because they conducted an illegal search of his digital cameras and memory cards. Consequently, he contends that the evidence obtained from the search should be suppressed. The State contends that the search was lawful as a search incident to arrest. Thus, the issue before the Court is whether a warrantless search is unreasonable when the police: apprehend a defendant, seize his backpack, and view images contained on the digital cameras found in the bag.
The purpose of the Fourth Amendment is to protect individuals from unreasonable searches and seizures of items or places in which an individual has a reasonable expectation of privacy.[2] See State v.Casas, 900 A.2d 1120, 1229 (R.I. 2006); State v. Werner, 615 A.2d 1010,1011 (R.I. 1992). *Page 4 
The primary method of this protection is the requirement that law enforcement officers obtain a warrant based on probable cause from a neutral magistrate or judge before they conduct a search. Johnson v.United States, 333 U.S. 10, 13-14 (1948). Searches conducted without obtaining a warrant are presumptively unreasonable unless they fall within one of the narrow exceptions to the search warrant requirement.Katz v. United States, 389 U.S. 347, 361, (1967). Rhode Island law recognizes several exceptions to the search warrant requirement, including: plain view, consent, and search incident to a lawful arrest.See State v. Portes, 840 A.2d 1131, 1136 (R.I. 2004); State v.Locke, 418 A.2d 843, 847 (R.I. 1980) Thus, in the present case, the retrieval of the images from defendant's digital cameras is a violation of the Fourth Amendment only if defendant had a reasonable expectation of privacy in the cameras, and the search fell within no acknowledged exception.
 Reasonable Expectation of Privacy
The Court must first address whether defendant had a reasonable expectation of privacy in the digital cameras and memory cards found in the backpack that he was holding when he was apprehended. A defendant only has standing to challenge a search under the Fourth Amendment if he or she had a legitimate expectation of privacy in the place subject to intrusion by the government. See Smith v. Maryland, 422 U.S. 735, 740
(1979). A defendant can meet his burden of establishing a legitimate expectation of privacy by proving both: (1) his or her own "subjective expectation of privacy" and (2) that the expectation is "one that society accepts as objectively reasonable." State v. Bertram,591 A.2d 14, 19 (R.I. 1991) (citing California v. Greenwood, 486 U.S. 35, 39,108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988)). A court must consider a number of factors to evaluate the reasonableness of a privacy expectation, including: "whether the suspect possessed or owned the area searched or the property seized; his or her prior use of *Page 5 
the area searched or the property seized; the person's ability to control or exclude others' use of the property; and the person's legitimate presence in the area searched." State v. Linde,876 A.2d 1115, 1127 (R.I. 2005).
Whether there is a reasonable expectation of privacy in a digital camera and in the images it holds is a matter of first impression in Rhode Island and research suggests, a novel issue in the country. Recent cases dealing with privacy expectations in electronic storage devices, such as cell phones and pagers, are the closest analogy. Cell phones, pagers, and laptops are similar to a digital camera in that they all hold personal data and process digital information. Courts across the country have found that an individual does have a reasonable expectation of privacy when it comes to these personal electronic devices. SeeUnited States v. Adjani, 452 F.3d 1140, 1146 (9th Cir. 2006) (noting that "individuals undoubtedly have a high expectation of privacy in the files stored on their personal computers"); United Statesv. Lynch, 908 F. Supp. 284, 287 (D.V.I. 1995) (holding that it was "reasonable for the defendant to consider the telephone numbers stored in the pager to be personal and private, and to expect them generally to be free from governmental invasion"); United States v. Chan,830 F. Supp. 531, 534 (D. Cal. 1993) (holding that the "expectation of privacy in an electronic repository for personal data is therefore analogous to that in a personal address book or other repository for such information"); U.S. v. Blas, No. 90-Cr-162, 1990 U.S. Dist. Lexis 19961, 56 (E.D. Wis. Dec. 4, 1990) (holding that "[a]n individual has the same expectation of privacy in a pager, computer or other electronic data storage and retrieval device as in a closed container.").
Here, the defendant had shut the cameras off and placed them into a closed backpack that he was carrying. He had not given permission to anyone else to carry the bag or to activate the cameras. They had remained in his possession all day. The police officers had to remove the *Page 6 
cameras from the backpack, turn the cameras on, and manipulate the cameras' controls in order to view the images. These facts indicate that defendant intended to keep the pictures private, at least for the time being. Consequently, the Court finds that defendant had a reasonable expectation of privacy in the digital cameras and memory cards.
 Search Incident to Arrest
Having found that defendant had a reasonable expectation of privacy in the cameras and memory cards, the Court now must address whether the search falls into any of the recognized exceptions to the search warrant requirement. It should be noted, however, that defendant does not argue that the seizure and search of his backpack was illegal. Instead, he argues that the search of the cameras and memory cards was unlawful because it amounted to a search of a closed container after his arrest. As a general rule, a search conducted incident to a lawful arrest is a valid exception under the Fourth Amendment's warrant requirement.See State v. DeWolfe, R.I., 121 R.I. 676, 402 A.2d 740, 742 (1979);State v. Brown, 106 R.I. 453, 459, 260 A.2d 716, 719 (1970). The justification for such warrantless searches is the need to secure any weapons that an arrestee might possess, as well as to prevent his or her concealment or destruction of evidence. Chimel v. California,395 U.S. 752, 763 (1969). The scope of a permissible search incident to an arrest has been the subject of numerous cases.
In United States v. Robinson, 414 U.S. 218, 236 (1973), the United States Supreme Court first held that pursuant to a search incident to an arrest, the arresting agent may open and search any container within the arrestee's grasp, even if the officer has no reason to believe that the arrestee has violent tendencies, or that he or she possesses a weapon. The principle set out in Robinson was later expanded to include objects no longer accessible by a defendant, but in the exclusive control of the arresting officers. See, e.g., New York v. Belton, 453 U.S. 454, 462 *Page 7 
(1980). In Belton, the Court rejected the idea that once a jacket — previously in the backseat of the defendant's car — was in the exclusive control of the police, a search could not be conducted.[3]Id. The Court reasoned that under this theory, no search incident to a valid arrest would ever be valid because just by seizing an article, an officer may be said to have reduced that article to his exclusive control. Id.
Subsequent cases have followed the reasoning in Robinson andBelton. They have held that an officer may search the contents of a container found on or near the arrestee in a search incident to arrest.See Chan, 830 F. Supp. at 535 (holding that the possessor of a pager has an expectation of privacy in the data contained therein in the same manner as an individual in possession of a closed container. The court ruled, however, that the search of the pager was lawful, relying on those cases which approve the search of containers found on or near the arrestee during a search incident to arrest); United States v.Johnson, 846 F.2d 279, 282 (5th Cir. 1988) (holding "[l]aw enforcement officers may, pursuant to a valid arrest, search any container on the person or within his reach"); State v. Goode, 350 N.C. 247, 255-56, 512
S.E.2d 414, 419 (1999) (citations omitted) (holding "[i]n the course of a search [incident to arrest], the officer may lawfully take from the person arrested any property which such person has about him and which is connected with the crime charged or which may be required as evidence thereof."). As clearly explained by the United States Court of Appeals for the Fourth Circuit,
 While the need for the incident-to-arrest exception is indeed grounded on the need to protect law enforcement officers and evidence, the validity of such a search does not end at the instant the risks justifying the search come to an end. Even though the warrant exception is well grounded on the existence of exigent risks attending arrest, the pragmatic necessity of not invalidating such a search the instant the risks pass is well accepted. . . . Just as *Page 8 
arresting officers need not determine that the defendant actually have a gun or actually intend to destroy evidence before conducting a search incident to arrest, they need not reorder the sequence of their conduct during arrest simply to satisfy an artificial rule that would link the validity of the search to the duration of the risks. Pragmatic necessity requires that we uphold the validity and reasonableness of a search incident to arrest if the search is part of the specific law enforcement operation during which the search occurs. United States v. Nelson, 102 F.3d 1344, 1347 (4th Cir. 1996).
One case, however, has limited the scope of a search incident to arrest is United States v. Chadwick, 433 U.S. 1 (1977). InChadwick, the United States Supreme Court held unlawful a warrantless search of the arrestee's footlocker conducted more than one hour after his arrest and while the footlocker was securely in the possession of the federal agents. Chadwick, 433 U.S. at 15. The search was completed long after the arrestees were securely in custody, and after the footlocker had been transported from the scene of the arrest to a federal building. Id. Consequently, Chadwick stands for the principle that a search may not be "remote in time or place from the arrest[.]"Id. (quoting Present v. United States, 376 U.S. 364, 367 (1964)).
Such a limitation often is expressed as a requirement that the search be "substantially contemporaneous" with the arrest. See Shipley v.California, 395 U.S. 818, 819 (1969); United States v. Currence,446 F.3d 554, 557 (4th Cir. 2006); Holmes v. Kucynda, 321 F.3d 1069, 1082
(11th Cir.2003); United States v. Morgan, 936 F.2d 1561, 1580 (10th Cir.1991), cert. denied, 502 U.S. 1102 (1992). The "substantially contemporaneous" requirement ordinarily is satisfied if the search of the arrestee, and any containers in his or her possession, is made at the location of the arrest while the arrestee is still at the scene.See, e.g., Currence, 446 F.3d at 554-59 (search into hollow area inside handlebar of defendant's bicycle valid where defendant was arrested and handcuffed before the police looked into the handlebar, and while defendant was still at the scene); Nelson, 102 F.3d at 1346-47 (search valid where, within a few minutes, agents arrested *Page 9 
defendant in the front room of an apartment, removed his shoulder bag, took him to a separate upstairs bedroom for questioning, and searched the bag); United States v. Han, 74 F.3d 537, 541-43 (4th Cir. 1996) (search valid where bag was in defendant's immediate control at the beginning of the encounter, the police officers left the room for a few minutes, and then the officers returned to the room to search the bag);State v. Fleming, 677 F.2d 602, 606-08 (7th Cir.1982) (search valid where bag was opened five minutes after defendant was handcuffed and moved to the street).
Federal courts have consistently recognized that arresting officers are empowered to search a suspect's baggage at the same time as an arrest, even though the danger to the officers or the risk of destruction has passed. See, e.g., United States v. Blevins, 2000 U.S. App. LEXIS 27045 (6th Cir. 2000) (holding that delay of search because of officers waiting for backup to arrive was not unreasonable); Han, 74 F.3d at 543 (holding that "[w]hen a container is within the immediate control of a suspect at the beginning of an encounter with law enforcement officers; and when the officers search the container at the scene of the arrest; the Fourth Amendment does not prohibit a reasonable delay, such as the one in this case, between the elimination of danger and the search."); United States v. Nohara,3 F.3d 1239, 1243 (9th Cir. 1993) (finding the two to three minute delay caused by handcuffing the individual was not an unreasonable delay before search); United States v. Turner,926 F.2d 883, 887-88 (9th Cir. 1991) (holding that officers handcuffing the defendant, taking him into the next room for safety reasons, and performing a search incident to arrest without a long delay did not make the search unreasonable); United States v. Felming, 677 F.2d 602, 607-08
(7th Cir. 1982) (holding that five minute delay occasioned by suspect's handcuffing did not render search invalid). *Page 10 
In Commonwealth v. Elizondo, 428 Mass. 322, 324, 701 N.E.2d 325
(1998), the Supreme Judicial Court of Massachusetts upheld the search of a bathroom as a search incident to arrest, even though the defendant was arrested and already handcuffed "four or five feet" outside the bathroom. Although the interior of the bathroom itself obviously was beyond the immediate reach of the handcuffed defendant at the exact time of the search, the court noted that a police officer's decision how and where to conduct the search is "`a quick ad hoc judgment, `and that `[a] search incident to arrest may be valid even though a court operating with the benefit of hindsight in an environment well removed from the scene of the arrest doubts that the defendant could have reached the items seized during the search.'" Commonwealth v. Netto, 438 Mass. 686,694-95 (Mass. 2003) (quoting United States v. Queen, 847 F.2d 346, 352
(7th Cir. 1988), and United States v. Lucas, 898 F.2d 606, 609 (8th Cir.), cert. denied, 498 U.S. 838, 112 L. Ed. 2d 81, 111 S. Ct. 112
(1990)). A court should not attempt to look back after the fact and determine the thought process of the police officers. See Robinson,414 U.S. at 235 ("The authority to search the person incident to a lawful custodial arrest . . . does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.").
Applying these principles, the Court concludes that the search of the cameras seized from defendant was a valid search incident to his arrest because the officers believed the cameras and memory cards were evidence of defendant's alleged crime. The officers were aware of a report that defendant may have been taking unlawful pictures. When they found cameras in the bag defendant was carrying at the time of his arrest, it was reasonable that they would believe these were the cameras he allegedly had been using, and that they would contain potential evidence of the alleged crime. Since defendant was carrying the bags when he was arrested, they were *Page 11 
clearly within his immediate control. The officers looked inside the bag shortly after his arrest and determined that the cameras, and their contents, contained apparent evidence of criminal activity. Consequently, although defendant no longer had access to the bags at that exact moment, the search was substantially contemporaneous with his arrest. Therefore, the Court concludes that it constituted a valid search incident to the arrest under the Fourth Amendment.
The defendant also argues that any statements he made to police at the police station after the search of his bag and his arrest are "fruit of the poisonous tree" and, accordingly, should be suppressed. However, defendant was given Miranda Rights before the police questioned him. Thus, it follows that because the arrest and search incident to arrest were valid, the statements made to police are admissible and the Motion to Suppress statements must also be denied.
 Conclusion
After consideration of the issues and the parties' memorandum, this Court denies defendant's Motion to Suppress the evidence obtained from a search of defendant's cameras, as well as the statements he made to police at the station. Although defendant had a reasonable expectation of privacy in the digital cameras, the search was conducted incident to a valid arrest, a recognized exception to the search warrant requirement.
[1] Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).
[2] The Fourth Amendment which is substantively the same as article 1, section 6, of the Rhode Island Constitution, provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[3] "Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." New York v. Belton, 453 U.S 454, 461 (1980).