**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2851-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER R. HALGAS,

    Defendant-Appellant.

_____

Submitted October 10, 2024 – Decided October 24, 2024

Before Judges Mawla, Natali, and Vinci.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 23-12-1473.

Bruce L. Castor, Jr. (Van Der Veen, Hartshorn, Levin & Lindheim) of the Pennsylvania bar, admitted pro hac vice, and Kaitlin C. McCaffrey (Van Der Veen Hartshorn, Levin & Lindheim), attorneys for appellant (Bruce L. Castor, Jr. and Kaitlin C. McCaffrey, on the briefs).

LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

American Civil Liberties Union of New Jersey Foundation and Jennifer N. Sellitti, Public Defender, attorneys for amici curiae American Civil Liberties Union of New Jersey and New Jersey Office of the Public Defender (Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the brief; Liza F. Weisberg and Jeanne M. LoCicero, on the brief).

PER CURIAM

By leave granted, defendant Christopher R. Halgas appeals from the April 25, 2024 order denying his motion to suppress evidence obtained through a search of his home pursuant to a warrant. We affirm in part and reverse in part.

I.

On September 3, 2023, at approximately 8:36 a.m., the Moorestown Police Department was dispatched to the area of defendant's home at 508 Westfield Road in Moorestown after receiving two reports of gunshots fired. The first report came from an officer patrolling in the area who heard possible gunshots.

The second report was made by a neighbor who called and reported approximately five "gunshots in the area of 508 Westfield Road." The caller "indicated that they heard a male on location screaming and yelling around [8:30 a.m.] just before they heard gunshots." According to the caller, "the argument was approximately [five] minutes long, and after hearing the gunshots, they

2

heard a motorcycle leave . . . ." The caller "observed a subject operating a large black Harley-Davidson motorcycle with a black helmet and black jacket speeding off from the residence."

Officers arrived on scene and interviewed defendant's spouse, Rosemary Halgas, who was home with their two minor daughters.[1] Rosemary reported defendant was not home, she did not hear any gunshots, and there were no active disputes at the residence. Officers located "several spent shell casings" on the ground in the driveway and "in the vicinity of the open garage door inside the garage." They also observed what they believed to be a bullet hole "in the roof of the garage." Officers then detained Rosemary and the daughters outside the residence while they "cleared the property." While doing so, they "observed numerous long guns inside the residence."

Based on this information, Detective Joseph Giorgi of the Moorestown Police Department applied for a warrant and certified there was probable cause to believe individuals engaged in the crimes of attempted murder, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose.

---

[1] Because Rosemary Halgas and defendant share a common surname, we refer to Rosemary using her first name. By doing so, we intend no disrespect.

A-2851-23

The warrant application sought to search and seize, among other things: (1) the residence, garage, and all detached structures; (2) four vehicles registered to defendant and Rosemary; and (3) "[v]ideo and/or digital surveillance systems and all components thereof." The warrant application also sought to search and seize:

> Any and all electronic devices with electronic messaging/social media/internet connection capability of any kind, including, but not limited to, cellular telephones, mp3 players, computers, tablets, smartwatches, smart televisions, streaming media players such as Roku boxes, [A]mazon firesticks, [A]pple TVs, and other similar devices, smart speakers including, but not limited to [A]mazon echo and other similar devices, laptop computers, video game consoles or systems with internet connection and messaging capability, cameras, and all other similar electronic devices along with all peripheral devices and storage media or hardware . . . .

The application was based on the following statement of probable cause:

> On [September 3, 2023] at approximately [8:36 a.m.], the Moorestown Police Department was dispatched to 508 Westfield Rd, Moorestown, NJ 08057 for a report of a shooting. Initially, Patrolman Paul Newman #3167 of the Moorestown Police Department was in the area of Westfield Road and Borton Landing Road at the time and advised of possible gunshots in the area. Central Communications received an additional call at the time for gunshots in the area of 508 Westfield Road, which may have been a result of an argument.

4

The second caller, a neighbor[,] indicated that they heard a male on location screaming and yelling around [8:30 a.m.] just before they heard gunshots. They indicated that the argument was approximately [five] minutes long, and after hearing the gunshots, they heard a motorcycle leave in the direction of Flying Feather Farm. The caller observed a subject operating a large black Harley-Davidson motorcycle with a black helmet and black jacket speeding off from the residence. The caller reported that they heard approximately five gunshots in total.

Patrols arrived on scene at 508 Westfield Road and made contact with [Rosemary], the homeowner, and her two daughters who are juveniles. Rosemary reported that she did not hear any gunshots and there were no active disputes at the residence. Rosemary stated that her husband Christopher Halgas was not home, only her two daughters. Prior to patrols making entry at the residence, several spent shell casings were located on the ground in the driveway and in the vicinity of the open garage door inside the garage. In addition, a bullet hole was located in the roof of the garage. Rosemary and her two daughters were detained outside of the residence as officers cleared the property. It should be noted that while Patrols were clearing the residence, they observed numerous long guns inside the residence.

Observed on the property of 508 Westfield Rd were three . . . shed structures in addition to the main residence with attached garage. Within the garage were two vehicles, a Chevrolet Corvette . . . and Aston Martin . . . . Located in the driveway are two vehicles Volkswagen Jetta . . . and a Dodge Durango . . . .

While on scene of 508 Westfield Road, electronic surveillance footage cameras were located on the

5

exterior of the residence to include the garage door which may have captured the incident. Additionally, numerous cellular phones are known to be inside the residence at this time.

The warrant was issued by a Judge of the Superior Court and executed. Officers seized cell phones used by Rosemary and the daughters. Officers also seized various weapons and an alleged "large capacity magazine."

The State searched the contents of Rosemary's phone and located a text message defendant sent her approximately five weeks earlier that the State alleges constituted a terroristic threat. On September 3, 2023, defendant was charged in a complaint-warrant with third-degree making terroristic threats, N.J.S.A. 2C:12-3(b), based on that text message to Rosemary. On September 15, the State's motion for pretrial detention was granted. On October 10, we affirmed the court's detention order.

On September 29, defendant was charged in a separate complaint-warrant with: (1) second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); (2) fourth-degree possession of a prohibited weapons and devices – large capacity magazine, N.J.S.A. 2C:39-3(j); and (3) second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2). On October 4, the State's motion for pretrial detention on those charges was granted. On November 6, we affirmed the court's detention order.

6

On December 5, a Burlington County grand jury returned a four-count indictment charging defendant with all the above offenses. Defendant moved to suppress the evidence seized as a result of the search warrant issued and executed on September 3. On February 6, and April 4, 2024, the court conducted a hearing on defendant's motion. Defendant called Detective Giorgi, who testified as the only witness at the hearing.

Detective Giorgi stated he had no reason to believe a cell phone was used in the commission of any of the offenses listed in the warrant application. He then testified as follows:

> [Defense Counsel]: What is it, then, that you were searching for on [Rosemary and the daughters'] phones?
>
> [Detective Giorgi]: Any communications which might assist in the investigation to understand what happened.
>
> [Defense Counsel]: And did you explain to [the issuing judge] in your warrant [application] why you thought that such information might be on these phones?
>
> . . . .
>
> [Detective Giorgi]: . . . I did not put that information in the probable cause, sir.

Later, he testified as follows:

> [Defense Counsel]: Did you write in the probable cause statement and explain to [the issuing judge] why you

7

thought evidence of a crime would likely be found in the memory of anyone's cell phone at the . . . residence?

[Detective Giorgi]: I did not, sir.

[Defense Counsel]: In fact, you made no mention of the use of cell phones anywhere in the probable cause statement, did you?

[Detective Giorgi]: The use of cell phones? No, sir.

[Defense Counsel]: Similarly, . . . you made no mention in your probable cause statement concerning what might be contained within the memory of anyone's cell phone located at the . . . residence, did you?

[Detective Giorgi]: I did not.

. . . .

[Defense Counsel]: Is there anything in the probable cause statement where you wrote to [the issuing judge] that led you to believe that the cell phones used by . . . [Rosemary, and the daughters] even might have been used in the commission of a crime?

[Detective Giorgi]: No, sir.

. . . .

[Defense Counsel]: [D]id you have any reason to think that cell phones and the contents of cell phones were related to anything that happened on September 3, 2023? I know you did[ not] know because you had[ not] looked yet but did you have any reason to think that there would be evidence of those three crimes on the memories of cell phones?

[Detective Giorgi]: There [were] cell phones located in the residence, so we believed that there could potentially be evidence of those crimes inside the residence.

. . . .

[Defense Counsel]: Which specific words in that probable cause statement are telling [the issuing judge] that there[ is] a possibility that the memory of cell phones would . . . hold evidence[] of one of the crimes you listed?

[Detective Giorgi]: There is nothing specific that says that.

At the hearing, counsel for defendant argued defendant owned the phones in question, paid the associated bills, and exercised control over them through an online portal. The State does not dispute those claims but contends they are insufficient to confer standing to challenge the search.

Rosemary was represented by independent counsel at the hearing. Through her counsel, she advised the court that she never consented to a search of her phone and objects to the seizure of the phone from the marital home in which she and defendant have a possessory interest. Rosemary also objected to the charges against and the prosecution of defendant. Counsel asserted Rosemary "does have an interest here and her rights were violated" and "the State's action was inappropriate . . . from a constitutional perspective."

9 <span>A-2851-23</span>

On April 25, 2024, the court entered an order denying defendant's motion supported by a brief written opinion dated April 23, 2024. The court found the statement of probable cause:

> [S]uggest[ed] there was some type of conflict that could have been of a domestic nature. Officers had the right to be dubious of [Rosemary's] assertions that she did not hear gunshots in light of the evidence at the scene. Given that the circumstances had the trappings of a domestic incident, it is probable to conclude cell phones might hold evidence of same.

The trial court also found, "[c]onsistent with the holding and rational[e] of State v. Armstrong, 463 N.J. Super. 576 (App. Div. 2020), the defendant has no legitimate expectation of privacy in the search and seizure of his wife's phone." The court was "not persuaded that the defendant's paying the phone bill somehow confers some proprietary, possessory or participatory interest in his wife's phone." Finally, the court "d[id] not find that the search warrant was overly broad" and "defendant's reliance on State v. Missak[2] is inapposite to the circumstances here for the reasons indicated in Armstrong."

On appeal, defendant raises the following points for our consideration:

> THE TRIAL COURT ERRED IN HOLDING THAT DEFENDANT LACKED STANDING TO CHALLENGE THE SEARCH OF THE CELL PHONE SEIZED FROM HIS RESIDENCE.

---

[2] 476 N.J. Super. 302 (App. Div. 2023).

A. THE STATE FAILED TO MEET ITS BURDEN OF ESTABLISHING THAT DEFENDANT LACKED A PROPRIETARY, POSSESSORY, OR PARTICIPATORY INTEREST IN THE ITEMS SEARCHED.

B. THE TRIAL COURT IGNORED THE DEFENSE'S REMAINING ARGUMENTS WITH RESPECT TO HIS PRIVACY INTEREST IN PRIVATE COMMUNICATIONS WITH HIS WIFE.

C. AFFIRMING THE TRIAL COURT'S RULING WOULD SET A DANGEROUS PRECEDENT.

THE TRIAL COURT ERRED BY UPHOLDING THE SEARCH WARRANT, AS IT WAS UNSUPPORTED BY PROBABLE CAUSE.

A. THE TRIAL COURT RAN AFOUL OF THIS COURT'S DECISION IN [MISSAK] BY UPHOLDING THE UNCONSTITUTIONAL WARRANT WITH RESPECT TO THE HALGAS FAMILY'S CELL PHONES.

B. THE SEARCH WARRANT LACKED PROBABLE CAUSE THAT ANY CRIME HAD BEEN COMMITTED, OR THAT ANY EVIDENCE THEREOF WOULD BE FOUND IN THE AREAS SOUGHT TO BE SEARCHED.

We permitted the American Civil Liberties Union of New Jersey Foundation and the New Jersey Office of the Public Defender to appear as amici

11

curiae. The amici support defendant's arguments relating to the seizure and search of the cell phones.

## II.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (citation omitted). We should disturb the trial court's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). In contrast, we are not required to afford deference to a trial court's legal conclusions, which we review de novo. State v. Bryant, 227 N.J. 60, 71-72 (2016); State v. Hathaway, 222 N.J. 453, 467 (2015).

The State contends defendant does not have standing to challenge the search of the cell phones seized from his residence. We are not convinced. Defendant has standing to challenge the search because the evidence was seized from his home. We are also persuaded defendant has a reasonable expectation of privacy as to all the evidence at issue because the evidence was seized from his home and the text messages he sent to Rosemary were protected by the marital communications privilege at the time of the search.

12

The United States Constitution and the New Jersey Constitution protect the people from unreasonable searches and seizures. State v. Randolph, 228 N.J. 566, 581 (2017) (citing U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7). A person alleging a violation of the Fourth Amendment must show that law enforcement violated "an expectation of privacy" that the person "possessed in the place searched or item seized." Id. at 582 (quoting United States v. Salvucci, 448 U.S. 83, 93 (1980)).

However, under the New Jersey Constitution, a "criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory, or participatory interest in either the place searched or the property seized." Id. at 581-82 (quoting State v. Alston, 88 N.J. 211, 228 (1981)). "[T]he State bears the burden of showing that defendant has no proprietary, possessory, or participatory interest in either the place searched or the property seized." Id. at 582 (citing State v. Brown, 216 N.J. 508, 528 (2014)).

It is beyond dispute that defendant has a reasonable expectation of privacy in his home. "No principle is more firmly rooted in our Federal and State Constitutions than the right of the people to be free from unreasonable searches of their homes." State v. Hemenway, 239 N.J. 111, 116 (2019). "That is so

13

because '[t]he sanctity of one's home is among our most cherished rights,' and because '[t]he very core of the Fourth Amendment and Article 1, Paragraph 7 protects the right of the people to be safe within the walls of their homes, free from governmental intrusion.'" Id. at 126 (alterations in original) (quoting State v. Frankel, 179 N.J. 586, 611 (2004)).

In this case, the evidence at issue, including the phones and any text messages or other information retrieved from those devices, was seized from defendant's home. Because defendant indisputably has a proprietary and possessory interest, as well as an expectation of privacy, in the place searched —his home—he had standing to bring a motion to suppress under both the Federal and State standards.[3]

Defendant also had an expectation of privacy and possessory interest in any text messages he sent Rosemary because they were protected by the marital privilege at the time of the search.

---

[3] We recognize Rosemary has an equal and corresponding interest and expectation of privacy in the marital home. That does not in any way diminish defendant's right to assert an interest or expectation of privacy in the home they share.

The marital communications privilege codified in N.J.S.A. 2A:84A-22 and N.J.R.E. 509 provides:

> (1)     Except as otherwise provided in this section, no person shall disclose any communication made in confidence between such person and his or her spouse or civil union partner.
>
> (2)     There is no privilege:
>
> > (a)     if both spouses or partners consent to the disclosure;
> >
> > (b)     if the communication is relevant to an issue in an action between the spouses or partners;
> >
> > (c)     in a criminal action or proceeding in which either spouse or partner consents to the disclosure;
> >
> > (d)     in a criminal action or proceeding coming within section 17 of P.L.1960, c. 52 (C.2A:84A-17); or
> >
> > (e)     in a criminal action or proceeding if the communication relates to an ongoing or future crime or fraud in which the spouses or partners were or are joint participants at the time of the communication.
>
> . . . .

The three criteria that must be met for the marital communications privilege to apply are:  (1) there is a communication, (2) the communication is made in confidence, and (3) the communication is between spouses.  N.J.S.A.

15

2A:84A-22. The privilege "'stems from the strong public policy of encouraging free and uninhibited communication between spouses, and, consequently, of protecting the sanctity and tranquility of marriage.'"  State v. Bailey, 252 N.J. 101, 118-119 (2022) (quoting State v. Mauti, 208 N.J. 519, 533 (2012)).  Absent an applicable exception, "[t]he fact that investigators lawfully obtained the text messages in the course of their investigation does not affect the communications' privileged status."  Id. at 128 (citing State v. Terry, 218 N.J. 224, 234-39 (2014)).

The State's contention that defendant does not have standing based on the marital privilege because he has been charged with offenses against Rosemary and his children lacks merit.  At the time the State seized the text messages from Rosemary's phone, defendant had a colorable claim that the communications were privileged communications and reasonably expected those confidential communications would be protected from search and seizure by the State.  The fact that the State later charged defendant with offenses based on the text messages cannot vitiate the privilege that applied at the time of the search.[4]

---

[4]  That is not to say Rosemary may not waive the privilege and disclose the text messages to law enforcement.  She has the right to do so, and defendant would have no right to object based on marital privilege.  Likewise, the State would be

16

Our decision in <u>Armstrong</u> does not dictate a different result. There, the defendant was charged with the murder of Rhasan Heath. 463 N.J. Super. at 579. The defendant filed a motion to suppress certain text messages he sent to Nache DeWitt, who was his former girlfriend. <u>Ibid.</u>

At the time of the murder, DeWitt was Heath's paramour. <u>Id.</u> at 580. On the night of the murder, DeWitt was with Heath, and the defendant sent her texts, that were threatening. <u>Ibid.</u> The State alleged the defendant was enraged and went in search of DeWitt. <u>Ibid.</u> The defendant saw DeWitt leave the building and an altercation ensued. <u>Ibid.</u> When Heath emerged from the building, defendant shot and killed him. <u>Ibid.</u>

DeWitt consented to a search of her phone and police recovered text messages sent by the defendant that the State intended to use against him. <u>Ibid.</u> We concluded the defendant did not have standing to challenge the search of DeWitt's phone and the seizure of the text messages from that device. <u>Id.</u> at 597. We observed "the mere fact that the text messages could be evidence used by

---

permitted to use otherwise privileged communications in certain criminal proceedings pursuant to N.J.S.A. 2A:84A-22(2)(c) and (d) if those communications were lawfully obtained. The issue before us is whether defendant has standing to object to the State's seizure of those potentially privileged communications.

the State to prove [the] defendant's commission of a crime does not confer standing upon him to seek their suppression." Id. at 596 (citing State v. Bruns, 172 N.J. 40, 58 (2002)).

We held the defendant did not have a reasonable expectation of privacy in the text messages he sent to another individual once that individual received the messages, "particularly absent a contractual or other legal obligation to protect defendant's text messages . . . ." Id. at 590. We acknowledged there "may be important differences between a third party who is contractually or legally bound to hold a person's digital 'papers and effects' and shield them from disclosure, and a third party who is simply counted on to exercise good judgment and discretion." Id. at 618 (citing Carpenter v. United States, 585 U.S. 296, 397-98 (2018) (Gorsuch, J., dissenting)).

In this case, unlike in Armstrong, the cell phones were seized from defendant's home, not from a third party who consented to the search. Because defendant has a reasonable expectation of privacy, as well as a possessory interest in his home, he has standing to bring a motion to suppress. Based on that reason alone, the rule articulated in Armstrong does not apply here.

Moreover, as discussed previously, the text messages at issue were cloaked by the marital privilege at the time of the search. Unlike in Armstrong,

defendant had a reasonable expectation of privacy in his confidential, privileged communications with his spouse and a reasonable expectation those communications would not be searched and seized by the State. Therefore, we conclude the court mistakenly found, based on our decision in Armstrong, defendant did not have standing to challenge the search warrant issued in this case.

### III.

Having determined defendant has standing, we turn to defendant's contention that the State did not have probable cause to search his home or the phones. We are unpersuaded by the State's argument that the warrant application set forth facts sufficient to support a finding of probable cause for the issuance of a search warrant for the cell phones. However, the application contained facts sufficient to establish probable cause to issue the search warrant for defendant's residence and the other areas searched.

"It is well settled that a search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (citation omitted). "[S]ubstantial deference must be paid by a reviewing

court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389).

We "'accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant.'" State v. Boone, 232 N.J. 417, 427 (2017) (alteration in original) (quoting Jones, 179 N.J. at 388). Our role is to determine whether the warrant application presented sufficient evidence for a finding of probable cause to search the location for the items sought. State v. Chippero, 201 N.J. 14, 31-32 (2009).

"The application for a warrant must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" Boone, 232 N.J. at 426 (emphasis in original) (quoting Jones, 179 N.J. at 388). Probable cause requires a "fair probability" that evidence of a crime will be found in a particular place. Chippero, 201 N.J. at 28. "Probable cause requires more than a mere hunch or bare suspicion." State v. Irelan, 375

N.J. Super. 100, 118 (App. Div. 2005) (citing State v. Burnett, 42 N.J. 377, 386-87 (1964)).

The probable cause inquiry requires courts to "make a practical, common sense determination whether, given all of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Marshall, 199 N.J. 602, 610 (2009) (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)); see also Jones, 179 N.J. at 389 (noting that a court must consider the "the totality of the circumstances" in determining if there is probable cause for a search). "[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Boone, 232 N.J. at 427 (alterations in original) (quoting Marshall, 199 N.J. at 611).

In Missak, 476 N.J. Super. at 316, we made clear "in the context of a cellular phone search, a valid warrant requires 'probable cause to believe that . . . evidence of a crime is at the place sought to be searched.'" There, the State "established probable cause to believe the phone found in the defendant's possession contained some evidence of the crimes charged" because the offenses at issue involved the use of defendant's cell phone allegedly to solicit a sexual

encounter with an individual he believed to be a fourteen-year-old girl.  Id. at 320.

The warrant issued, however, permitted an "expansive search for all the data and information on the seized cellular phone."  Id. at 322.  We concluded the warrant was infirm because it authorized "searches of information and data within the phone for which" the State "d[id] not adequately establish probable cause."  Ibid.  We determined that, when obtaining a warrant to search a cell phone, the State must "establish probable cause to believe the various information and data [it] requests to search contain evidence pertaining to the criminal charges pending against defendant."  Id. at 323.

In this case, we need not reach the scope of search issue addressed in Missak because the warrant application does not set forth facts sufficient to support a finding of probable cause to seize and search the cell phones.  The warrant application does not set forth any factual basis to find a nexus between the alleged crimes and information that might be located on cell phones.  The crimes themselves do not involve cell phones or electronic communications, and there is nothing in the warrant application to create a reasonable belief that relevant evidence would be located on the cell phones used by Rosemary or the daughters.  The only mention of cell phones in the application is the

unremarkable statement that "numerous cellular phones are known to be inside the residence . . . ." The application does not provide any other information about the cell phones or even specify where in the residence they were located.

At the hearing, Detective Giorgi testified the only reason he believed relevant evidence might be found on the cell phones was that "[t]here [were] cell phones located in the residence, so we believed that there could potentially be evidence of those crimes inside the residence." According to the Detective, he wanted to seize the phones to see "[a]ny communications which might assist us in the investigation to understand what happened."

That is not an adequate factual basis for probable cause to search a cell phone. The State must do more than assert a "mere hunch or bare suspicion." Burnett, 42 N.J. at 386-87. Here, the State does not even meet that inadequate threshold. Instead, the State contends it had probable cause because the cell phones were located in the residence, and it wanted to review the contents of the cell phones to see if there was anything that might be helpful to the investigation. Probable cause requires significantly more than that.

We are not persuaded by the court's finding that the search of the cell phones was warranted because the incident had the "trappings of a domestic

incident." The warrant application is devoid of any express or implicit reference to an alleged domestic incident, nor does the application indicate such an offense was under investigation at the time. Even assuming the court's characterization of the incident was supported by the warrant application, the application fails to establish any factual basis for the court's finding that "it is probable . . . cell phones might hold evidence of same." The mere fact that the cell phones were located somewhere in the residence is plainly insufficient to support a finding that "there is a fair probability . . . evidence of a crime will be found" on them. Marshall, 199 N.J. at 610.

The court determined correctly the State established probable cause to search the residence, including the vehicles, detached structures, and surveillance system. Issuance of the warrant was supported by two reports of gunshots in the area, the neighbor's report of a male screaming and yelling before the shots were fired, the officer's observations of shell casings in the driveway, a possible bullet hole in the garage, and the existence of surveillance cameras. Those facts as set forth in the warrant application were adequate to support issuance of the warrant not including authorization to search the cell phones.

24

IV.

We reverse the April 25, 2024 order to the extent it denied defendant's motion to suppress the search and seizure of the cell phones at issue and evidence obtained from those devices. The order is affirmed to the extent it denied the remainder of defendant's motion to suppress.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2851-23