**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1845-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE PEREZ, a/k/a
JOSE M. PEREZ,

    Defendant-Appellant.

_____

        Argued February 4, 2026 – Decided June 11, 2026

        Before Judges Berdote Byrne and Jablonski.

        On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 22-12-2198.

        Ethan Kisch, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Ethan Kisch, on the briefs).

        Brian Uzdavinis, Deputy Attorney General, argued the cause for respondent (Jennifer Davenport, Acting Attorney General, attorney; Brian Uzdavinis, of counsel and on the brief).

PER CURIAM

Following his guilty plea to second-degree certain persons not to possess weapons,[1] defendant Jose Perez appeals from two orders of the Law Division: a December 6, 2021 order denying his motion to suppress evidence, and a June 5, 2023 order denying his motion for reconsideration. After careful review of the record and applicable principles of law, we reverse.

I.

We derive the following largely uncontested facts from the suppression hearing record and from our review of the officers' body worn camera footage.

In March 2021, Police Officer Brandon Burkhardt of the Lakewood Township Police Department joined fellow Officer Soriano[2] to respond to a car accident in that municipality. When Burkhardt arrived, defendant and Soriano were standing near each other beside defendant's car which had collided with two parked cars and been rendered undrivable. The interaction between the officers and defendant was captured on the officers' body worn cameras.

That footage shows defendant searching through his trunk while Burkhardt inspected the interior of the car with his flashlight. The officer then

___

[1] N.J.S.A. 2C:39-7(b)(1).

[2] Officer Soriano's first name does not appear in the record before us.

A-1845-23

passed in front of the open front driver's side window, walked back, and then focused his flashlight for approximately ten seconds on an object inside the car- a blue nylon bag. Only a small piece of the object was visible, but it appeared to be something wooden. After noticing this object, Burkhardt said something that was indiscernible on the video. He proceeded to walk around the front of the car to the front passenger side window and illuminated the interior.

Burkhardt called for Soriano and said:

> Burkhardt: What does this thing look like to you? In that blue bag.
>
> Soriano: Ooh, I don't know.

Burkhardt then asked defendant "Hey, man. What's in that blue bag? It's not a weapon, is it? . . . . This thing. It looks like the butt of a rifle . . . ." Defendant walked from the trunk to the front driver's side window and joined Burkhardt at the front window. Defendant responded: "Oh, nah." and then walked back to the trunk.

Burkhardt then reached through the window into the car and opened the bag "just enough to see a [] trigger guard . . . ." The officers arrested defendant and removed a shotgun from the bag.

A-1845-23

A grand jury indicted defendant for third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c)(1); third-degree unlawful possession of a prohibited weapon, N.J.S.A. 2C:39-3(b); and second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b)(1). Defendant moved to suppress both the firearm and certain incriminating statements he made to the officers at the scene To justify the constitutionality of the officer's actions, the State exclusively relied on the plain-view exception to the warrant requirement.[3]

At the hearing on defendant's motion, Burkhardt recounted the events that led to the discovery of the shotgun and provided additional detail than what was demonstrated on the body worn camera footage. He testified that when defendant began to search for his credentials in the trunk of his car, Burkhardt looked through the open front driver's side window with his flashlight and observed a "blue nylon sleeve about two feet in length . . . where the gas pedal would be, with the end resting on the driver's seat to the left [] of the center console. . . . "

---

[3] On appeal, the State acknowledges that other exceptions to the warrant requirement might have been presented to justify Burkhardt's entry into the vehicle. However, these exceptions were not argued to the motion court and we decline to consider those matters for the first time on appeal. State v. Witt, 233 N.J. 409, 418-19 (2015).

According to Burkhardt:

> What concerned me about the [bag] was that the opening was facing back towards where the driver would sit, and there was a wooden oval shaped like a handle visible just barely in the bag, and it appeared to have been roughly cut. And my initial suspicion was that it could be a firearm because of the oval shape resembling the stock of a long gun such as a rifle. So then, I had walked around the other side to get- try to see it from another angle. And then I also had . . . [] Soriano take a look at it and see what he thought.

Burkhardt noted on cross-examination that he saw "[p]erhaps [a] four-to five-inch wooden oval sized object, visible from the outside of the vehicle without breaking the plane of the window. That's what initially caused me to be suspicious." He described the object as "roughly cut" and his "first thought, . . . 'is that a baseball bat or a short bat?' But I'm like, 'No, it's—a bat would be like a round maybe two inch in diameter circle. This is more of a[n] oval shape.'"

On cross-examination, counsel probed the interaction Burkhardt had with defendant about the item:

> [Burkhardt]:     I'm asking, "Is this item a weapon," and he says well initially, "Where?" And then I say, "Right here in this blue bag," he says "Nah" and then walks away. And I say "Mind if I just take a look at what it is?" And he mutters something and says, "Part of this right here," and then goes back into the trunk.

A-1845-23

And at that point, my suspicions are increasingly rising, so [] Soriano goes – you could see he walks back to keep an eye on him in the trunk.

[Defense Counsel]:      At that point in time he never gave- he didn't say you could search the car; correct?

[Burkhardt]:      I asked if I could inspect the item to –

[Defense Counsel]:      You – you—

[Burkhardt]:      -- verify if it was a weapon, and I got an evasive answer.

[Defense Counsel]:      And he did not give you consent; correct?  He did not say, "you can search this car and look into the blue nylon bag"?

        . . . .

[Burkhardt]:      No, he didn't give me a clear and, you know, consent as you're saying, but his evasive answer increased my suspicions of what I already believed was a weapon to be a weapon.  At that point I reached in just enough to inspect the opening to confirm or deny said suspicion.

[Defense Counsel]:      So you think it's a weapon, Soriano doesn't know, you have heightened suspicion, and then you opened it up.

        . . . .

[Defense Counsel]:      Peered up so- so you can.

[Burkhardt]:      Yeah.

A-1845-23

[Defense Counsel]: To look inside.

[Burkhardt]: Yeah. The opening that was already partially visible where I saw an item that I believed to be a weapon, I pulled it just enough to see a trigger guard, trigger, which confirmed my suspicions.

[Defense Counsel]: So

[Burkhardt]: I'd say I went from about [ninety-five] to a hundred percent confidence at that point.

[Defense Counsel]: So you could not observe that from outside of the vehicle; correct?

[Burkhardt]: I couldn't see the trigger, the trigger guard.

[Defense Counsel]: And you could not observe anything but the little top of it; correct  Of the - -

[Burkhardt]: Not the top. I saw the rear of the stock, you know about yay big, visible. . . . Okay. Perhaps [a] four-to-five-inch wooden oval sized object, visible from outside the vehicle, without breaking the plane of the window. That's what initially caused me to be suspicious . . . .

Defense counsel continued:

[Defense Counsel]: So, when – if you – if you suspected that it was, in fact, a weapon, why would you leave the defendant in his trunk – back at his trunk when []Soriano comes up and – and next to you looking in the vehicle.

[Assistant Prosecutor]: Objection. That's not what – that's not what I saw on the video.

7

. . . .

[Assistant Prosecutor]: He goes back and asks him, "what's in – what's inside that blue bag?"

The Court: Well, but I think [defense counsel's question] is when Soriano looked in through the window, the officer was at his immediate right. Let me ask the question that way. When Soriano looked in through the window, both of you with your flashlights.

. . . .

The Court: He was to your left and you were to his immediate right; correct?

[Burkhardt]: I believe so.

The Court: Okay. So, at this point in time, the defendant is in the trunk by himself.

[Burkhardt]: Oh, he was.

The Court: Okay.

[Burkhardt]: And in retrospect, if I was going to critique my own officer safety, I would agree that, you know, wasn't the best tactic [] given what was found, but.

. . . .

[Defense Counsel]: And when you saw that nylon bag[,] in your report you said, "I observed the driver's seat area approximately a two-foot-long item concealed in the blue nylon sleeve." Correct?

8

[Burkhardt]:          Correct.

[Defense Counsel]:          What does the word "concealed" mean to you?

[Burkhardt]:          Hidden within or covered by.

[Defense Counsel]:          Okay.  So, it was not immediately known what the item was; correct?

[Burkhardt]:          I wasn't a hundred percent sure.

[Defense Counsel]:          You weren't sure at all; were you?  You had a - - - feel—you had a hunch; correct.

[Burkhardt]:          I'd say I had a strong hunch.  That's why I suggested it was a fire- a weapon when I –

[Defense Counsel]:          You only had a hunch.  You didn't know what it was; correct?

[Burkhardt]:          I had a high degree of certainty what it was, but –

The motion judge denied defendant's application, concluding the police were "lawfully in the viewing area" when they observed the nylon bag "because they stood outside of [d]efendant's vehicle while responding to a motor vehicle accident."  The judge also concluded the identity of the object as a firearm was "immediately apparent" due to the "outward appearance of the nylon bag, Burkhardt's 'high degree of certainty' that the bag contained a

9

firearm and [d]efendant's evasive answers established probable cause to associate the property seized with criminal activity."

In December 2022, a different grand jury returned a superseding indictment and charged defendant with third-degree unlawful possession of a prohibited weapon, N.J.S.A. 2C:39-3(b); first-degree unlawful possession of a shotgun with a prior No Early Release Act Conviction, N.J.S.A. 2C:39-5(c)(1); and second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b)(1).

Defendant moved for reconsideration of the order denying his motion to suppress. In May 2023, a second motion judge granted the motion in part, and suppressed defendant's statements to police. However, the judge did not suppress the firearm, finding the State justified the search under the plain-view exception.

In October 2023, defendant pled guilty to one count of certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b)(1), in exchange for a five-year prison term with a five-year period of parole ineligibility. He was sentenced according to that plea agreement.

Appealing both the December 2021 and June 2023 orders denying his motions to suppress and for reconsideration, defendant argues:

Point 1

Suppression is required because the police conducted a warrantless search and seizure and the plain-view doctrine did not apply.

A. The plain-view doctrine did not provide a legal basis for the officer's intrusion into the car to search the bag and seize the gun, and the State raised no other exception to the warrant requirement.

B. Even if the plain-view doctrine applie[d], it was not satisfied because it was not immediately apparent that the blue bag contained a gun.

II.

"Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). This is due to the fact the trial court has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "Thus, appellate courts should reverse only when the trial court's determination is 'so clearly mistaken that the interests of

11

justice demand intervention and correction.'" Gamble, 218 N.J. at 425 (quoting Elders, 192 N.J. at 244).

The legal import of those facts and the "trial court's interpretation of the law . . . are not entitled to any special deference." Ibid. (citing State v. Ghandi, 201 N.J. 161, 176 (2010); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "Therefore, a trial court's legal conclusions are reviewed de novo." Ibid. (citing Ghandi, 201 N.J. at 176).

Under the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of our State Constitution, "[c]onstitutional protections prohibiting unreasonable searches and seizures 'impose a standard of reasonableness on the exercise of discretion by government officials to protect persons against arbitrary invasions.'" Gamble, 218 N.J. at 425 (quoting State v. Maristany, 133 N.J. 299, 304 (1993)). "Reasonableness is the 'touchstone' of the Fourth Amendment." Ibid. (quoting State v. Crumb, 307 N.J. Super. 204, 245 (App. Div. 1997)).

"A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." Ibid. (quoting State v. Cooke, 163 N.J. 657, 664 (2000)). "The State bears the burden of demonstrating that a warrantless search is justified by 'one of the "few

A-1845-23

specifically established and well-delineated exceptions" to the warrant requirement.'" State v. Bogan, 200 N.J. 61, 73 (2009) (quoting State v. Frankel, 179 N.J. 586, 598 (2004), (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978))).

One exception is the plain-view doctrine. State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023). To justify a warrantless search under this doctrine, "the State must prove: (1) 'the officer [was] lawfully . . . in the area where he observed and seized the incriminating item or contraband'; and (2) 'it must be immediately apparent that the seized item is evidence of a crime.'" Id. at 20-21 (alteration in original) (quoting State v. Gonzales, 227 N.J. 77, 101 (2016)). "However, the plain-view doctrine does not authorize the police to cross the threshold of a constitutionally protected space." Id. at 21. "Rather, the plain-view doctrine presupposes the officer is already present within the [area] at the moment the observation is made." Ibid. (citing State v. Wright, 221 N.J. 456, 478 (2015)). See also Gonzales, 227 N.J. at 101.

Applying this well-established law, we conclude both the motion to suppress and the reconsideration application were denied in error. The parties do not dispute the State satisfied the first prong of the plain-view test: the

officers were lawfully present at the location as a result of their response to, and investigation of, the automobile accident involving the defendant.

The issue presented in this case, however, concerns the applicability of the second prong—specifically, whether it was immediately apparent that the item seized was a weapon. On this point, we conclude the motion judge mistakenly exercised his discretion because his decision was based on unconsidered discrepancies between Burkhardt's testimony and the body worn camera footage of the event.

To seize evidence in plain view a police officer must have "probable cause to associate the [item] with criminal activity." State v. Harris, 457 N.J. Super. 34, 45 (App. Div. 2019) (alteration in original) (quoting State v. Mann, 203 N.J. 328, 341 (2010)). "Probable cause requires more than a mere hunch or bare suspicion, but less than the legal evidence necessary to convict; it requires a well-grounded suspicion." State v. Irelan, 375 N.J. Super. 100, 118 (App. Div. 2005) (citing State v. Burnett, 42 N.J. 377, 386-87 (1964)). When making this determination the court should look to "what the police officer reasonably knew at the time of the seizure." State v. Johnson, 171 N.J. 192, 213 (quoting State v. Bruzzese, 94 N.J. 210, 237 (1983), overruled on other grounds, Gonzales, 227 N.J. at 101). All that is necessary to "meet [this]

requirement is '[a] practical, nontechnical' probability that incriminating evidence is involved." State v. Reininger, 430 N.J. Super. 517, 536 (App. Div. 2013) (second alteration in original) (quoting Bruzzese, 94 N.J. at 237).

Our review of the record reveals that Burkhardt possessed only an unsubstantiated hunch that the nylon bag contained an illegal weapon. This level of suspicion is not sufficient to establish the probable cause necessary to satisfy the second prong of the plain-view doctrine. Since the body-worn camera footage contrasts with the evidence presented at the suppression hearing, we conclude that the motion judge mistakenly exercised his discretion when he concluded the object was "immediately apparent" because his findings were not supported by any competent and credible evidence in the record.

The record shows that, before Burkhardt reached through the window into the car, he observed only a barely visible, oval-shaped wooden object. He did not immediately recognize nor identify the object as a weapon. Even after changing his position to the other side of the vehicle and adopting a different viewing angle, he was still unable to ascertain the identity of the object. Instead, upon noticing it, Burkhardt asked Soriano about its identification. Soriano was similarly unable to confirm what it was.

A-1845-23

At the suppression hearing, although Burkhardt suspected he might be looking at the stock of a rifle, he described this suspicion as merely a "strong hunch" when questioned on cross-examination. Despite Burkhardt's testimony that he had a "high degree of certainty" the object in the bag was a firearm, he did not express this same confidence to Soriano during the initial investigation. The motion judge did not address the discrepancy between Burkhardt's inability to identify the weapon at the time of the search and his subsequent testimony. We conclude that this was a misapplication of the judge's discretion.

There was additional contradictory evidence. The first motion judge relied on Burkhardt's testimony that the defendant gave an "evasive" answer, which allegedly heightened Burkhardt's suspicion. However, this claim is belied by the body-worn camera footage, which shows the defendant responding to Burkhardt's question clearly, directly, and without hesitation. We cannot conclude that the record supported the motion judge's finding concerning defendant's evasiveness.

Moreover, the motion judge credited Burkhardt's testimony that he was "ninety-five percent" certain the item was a weapon is controverted by his action that Burkhardt didn't immediately detain defendant, but rather allowed

A-1845-23

him to return to the rear of the car to continue searching his trunk for his credentials.

In sum, we conclude that when the motion judge based his decisions on facts that contradicted each other, his legal reasoning rested on a flawed premise. As a result, the judge mistakenly exercised his discretion, leading to an incorrect and unsound legal conclusion that the object was "immediately apparent" as a firearm and that Burkhardt's search was constitutionally permissible.

Our decision renders defendant's appeal from the denial of his motion for reconsideration moot.

Reversed. The plea agreement and resulting conviction are vacated and the matter is remanded for trial on all charges.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1845-23